**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Eric Owen WINSON, Defendant-Appellee.**

**No. 85–5293.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 24, 1985.

Decided June 18, 1986.

---

Joe B. Brown, argued, U.S. Atty., Nashville, Tenn., William M. Cohen, for plaintiff-appellant.

Vincent E. Wehby, argued, Nashville, Tenn., for defendant-appellee.

Before ENGEL and KEITH, Circuit Judges; and JOINER, Senior District Judge.*

ENGEL, Circuit Judge.

The single issue in this appeal is whether the "any court" provision of 18 U.S.C. § 922(h)(1)[1] applies only to convictions by courts within the United States.

The United States appeals the district court's dismissal of a four count indictment charging Winson with violating Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No. 90–351, 82 Stat 197. Count One charged Winson with unlawful receipt of a .460 caliber Weatherby MKV rifle and a .20 gauge Browning shotgun, in violation of section 922(h)(1). Count Two charged that Winson knowingly made a false statement to the dealer in order to obtain the guns mentioned in Count One, in violation of section 922(a)(6).[2] Count Three charged Winson with unlaw-

---

* Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 922(h)(1) provides:
   (h) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ...
   to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. 18 U.S.C. § 922(a)(6) provides that it shall be unlawful—

for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such imported manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

ful receipt of a .243 caliber Colt rifle, in violation of section 922(h)(1). Count Four charged that Winson knowingly made a false statement to the dealer in order to obtain the gun mentioned in Count Three, in violation of section 922(a)(6).

Section 922(h)(1) makes it unlawful for any person "who has been convicted *in any court* of … a crime punishable by imprisonment for a term exceeding one year … to receive any firearm or ammunition which has been shipped … in interstate … commerce." (emphasis added).

Winson was a citizen of Zimbabwe until June 12, 1985, when he became a naturalized citizen of the United States. Since 1976, he and his family were resident aliens. Counts One and Three charging violations of section 922(h)(1) are predicated upon two convictions alleged by the government to have been obtained in foreign countries: a 1970 conviction by an Argentinian court of possessing counterfeit United States currency and a 1976 conviction of fraud by a Swiss court. Counts Two and Four charging violations of section 922(a)(6) are predicated upon Winson's failure to disclose these convictions to the dealer when he bought the guns at issue here. Winson filed a motion to dismiss the indictment in the district court arguing that section 922(h)(1) does not embrace convictions obtained in foreign courts.

In a memorandum opinion dismissing the indictment in its entirety, the trial judge noted that a similar statute, 18 U.S.C. App. § 1202,[3] expressly applies only to convictions "by a court of the United States or of a State or any political subdivision thereof of a felony" and held that it created an ambiguity in the "any court" language of section 922(h)(1). The trial judge stated:

> [T]his Court is guided by the well-established maxim that "ambiguity concerning

the ambit of criminal statutes should be resolved in favor of lenity." *Lewis [Rewis] v. United States,* 401 U.S. 808 [91 S.Ct. 1056, 28 L.Ed.2d 493] (1971). *See also Whalen v. United States,* 445 U.S. 684 n. 10 [100 S.Ct. 1432, 63 L.Ed.2d 715] (1980); *United States v. Dalpiaz,* 527 F.2d 548, 552 (6th Cir.1975). This general rule applies when a court is uncertain about a statute's meaning and is not to be used as a device to circumvent legislative intent. *See Perrin v. United States,* 444 U.S. 37, 49–50 [100 S.Ct. 311, 317–18, 62 L.Ed.2d 199] (1979).

*United States v. Winson,* No. 3–84–00060, slip op. at 2–3 (M.D.Tenn. Mar. 6, 1985).

The trial judge then observed that section 922(h) had been held by the Supreme Court to be unambiguous in its provisions relating to interstate commerce. *See Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Nevertheless, the court went on to say:

> *Barrett* does not address the issue of interpreting the phrase "in any court" as it pertains to Congressional limitations on gun possession. Consequently, although the intent of Congress may be clear in section 922(h) as it pertains to interstate commerce, it is this Court's conclusion that interpretation of "in any court" demands resolution in defendant's favor. Adherence to the Government's theory would require judicial recognition of military tribunal adjudications in Nicaragua, as well as condemnations of political prisoners in Poland. Congress could not have intended such an inequitable application of the statute. "In any court" can only be reasonably interpreted as referring to convictions rendered in courts of the United States or of a state or political subdivision thereof. The principle of lenity is controlling. *See*

---

**3.** Section 1202 provides in relevant part:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

.        .        .        .        .

and who receives, possesses, or transports in commerce or affecting commerce, after the

date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Section 1202 is included in Title VII of the Omnibus Crime Control and Safe Streets Act of 1968. *See* 82 Stat. 236.

*United States v. Bass,* 404 U.S. 336 [92 S.Ct. 515, 30 L.Ed.2d 488] (1971).

*Winson,* at 3–4.

◼ We have carefully considered the rationale and the cases cited by the trial judge in support of his holding. We have also carefully reviewed the legislative history of both 18 U.S.C. § 922 and of 18 U.S.C.App. § 1202, as well as the judicial interpretation which has developed concerning both Acts. We agree with the trial court that an examination of the legislative history of Title IV reveals no discussion of the actual meaning of the phrase "in any court." At the same time, it is equally evident that the cited language in section 922 was not intended by the Congress to be limited only to convictions by the courts of the United States or of a state or political subdivision thereof as is the specific language of 18 U.S.C.App. § 1202. In essence, the trial judge urges that we view the patently unambiguous language in section 922 as rendered latently so by the co-existence of the expressly different and more limiting language in section 1202. This ambiguity arises, if at all, from the imposition upon Title IV of the limitations expressly contained in Title VII. What history there is of the two Titles runs entirely counter to this conclusion.

◼ Although several Supreme Court cases have noted this partial tension between section 922 and section 1202, *see Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 111, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983); *Lewis v. United States,* 445 U.S. 55, 63–64, 100 S.Ct. 915, 919–20, 63 L.Ed.2d 198 (1980); *United States v. Batchelder,* 442 U.S. 114, 119–21, 99 S.Ct. 2198, 2201–03, 60 L.Ed.2d 755 (1978), none has intimated that the two statutes were intended to mean the same thing. On the contrary, the Court in *Batchelder* ruled that the "Congress' clear understanding [was] that the two Titles would be applied independently." 442 U.S. at 121, 99 S.Ct. at 2202 (footnote omitted). After reviewing the legislative history of Title VII, Justice Marshall made these observations:

Immediately before the Senate passed Title VII, Senator Dodd inquired whether it would substitute for Title IV. 114 Cong. Rec. 14774 (1968). Senator Long, the sponsor of the amendment, replied that section 1202 would "take nothing from" but merely "add to" Title IV. 114 Cong.Rec. 14774 (1968). Similarly, although Title VII received only passing mention in House discussion of the bill, Representative Machen made clear that the amendment would "complement ... the gun-control legislation contained in title IV." Id. at 16286. Had these legislators intended to pre-empt Title IV in cases of overlap, they presumably would not have indicated that the purpose of Title VII was to complement Title IV.

*Batchelder,* 442 U.S. at 120, 99 S.Ct. at 2202 (footnote omitted).

It is evident that the Supreme Court has found a congressional intent to give each statute an independent construction and application, especially where, as here, the express language of the two Titles indicates different meanings. Having found such an intent, we believe it necessarily follows that, viewed independently, the cited language is indeed unambiguous. The power of Congress to legislate in this area is unquestioned. Therefore, "[r]esolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress." *United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 1948, 80 L.Ed.2d 492 (1984).

◼ In addition, we are not in any way persuaded that the statute in question is either inequitable on its face or in its application here. First of all, there is no evidence that the parade of horribles hypothesized by the district judge has any application to the facts here. It is not pointed out to us in any particular how the claimed convictions in Argentina and Switzerland were the result of the violation of the defendant's civil rights or contrary to any cherished principle of American constitutional law. The facts of the convictions are not contested, at least for the purposes of the motion to dismiss which was made in

this case. Since the object of the statute is to prevent the possession of firearms by individuals with serious criminal records, *see, e.g., Braswell v. United States,* 224 F.2d 706 (10th Cir.), *cert. denied,* 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752 (1955), we can perceive no reason why the commission of serious crimes elsewhere in the world is likely to make the person so convicted less dangerous than he whose crimes were committed within the United States. Moreover, we do not perceive any congressional intent to exclude from the Act's coverage a class of felon whose unlawful conduct occurred outside of this country.

Even more persuasive, however, is the fact that Congress itself has offered a plain and sensible remedy for the concerns expressed by the trial judge. Both Title IV and Title VII contain provisions for the relief from the disabilities imposed by section 922 and section 1202(a). Section 925(c) authorizes the Secretary of the Treasury to grant such relief where an applicant shows that "the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). The Supreme Court in *Lewis v. United States,* suggested that individuals whose felony convictions are constitutionally infirm might use Title VII's corresponding procedure, 18 U.S.C.App. § 1203(2), and observed that "Congress clearly intended that the defendant clear his status before obtaining a firearm, thereby fulfilling Congress' purpose 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and danger-

ous.'" 445 U.S. at 64–65, 100 S.Ct. at 920 (citation omitted). *See also Dickerson v. New Banner Institute, Inc.,* 460 U.S. at 112, 103 S.Ct. at 991. Further protection is provided to persons in plaintiff's class by the availability of judicial review of the Secretary's decision to deny statutory relief from disabilities. *See Bradley v. Bureau of Alcohol, Tobacco and Firearms,* 736 F.2d 1238 (8th Cir.1984); *Kitchens v. Bureau of Alcohol, Tobacco and Firearms,* 535 F.2d 1197 (9th Cir.1976). Beyond this, we cannot avoid observing the clarity of the questions asked on the approved form of disclosure which Winson is charged with having falsely executed. Among other questions, the form requires the disclosure of whether the applicant has "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year...."

■ Finally Winson contends that the application of section 922(h)(1) to foreign convictions is inequitable because the Bureau of Alcohol, Tobacco and Firearms itself interpreted this section as being inapplicable to foreign convictions. Marvin J. Dressler, then director of ATF's Technical Division, issued an interpretation to that effect in 1974.[4] The government does not dispute that the position of the ATF was that which is stated in the Dressler interpretation. The record reflects that the ATF changed its position on July 30, 1984. Steven Higgens, the Director of Enforcement and Operations, concluded that "the ATF should reverse its current position so as to acknowledge the Federal firearms and explosives disabilities of persons who have been convicted in foreign courts of a crime punishable by imprisonment for a term exceeding 1 year."[5]

---

**4.** This interpretation is contained in a May 7, 1974, memorandum addressed to the Chief of the Regulations and Procedures Division of the Bureau of Alcohol, Tobacco and Firearms. It appears to be a response to a January 11, 1974, inquiry asking whether foreign convictions preclude issuance of firearms permits under the Internal Revenue Code or under Title 18. This document is an internal memorandum and does not appear to have been intended for circulation to anyone other than the Regulations and Procedures Division.

This memorandum clearly does not have the effect of an administrative regulation or a published rule. Even the appellee acknowledges that it is not binding on this court. *See* Appellee's br. at 21.

**5.** This policy change is contained in a memorandum from Mr. Higgens to the Assistant Secre-

In the 1974 interpretation by the Director of ATF's Technical Division, three reasons were given:

1. Foreign law does not, in the majority of instances, give the protections to our citizens that they are afforded under our system of justice.
2. There is difficulty in interpreting foreign law with respect to the specific offense charged.
3. There is extreme difficulty in obtaining adequate documentation of a foreign conviction.

In overturning its earlier decision the Director observed, as have we, that "[w]ith regard to the reading of 18 U.S.C. Chapter 44 in conjunction with the provisions of Title VII, the United States Supreme Court has made it clear that these are independent statutes, each of which is to be interpreted and enforced on its own terms. *United States v. Batchelder,* 442 U.S. 114, 119, 99 S.Ct. 2198, 2201, 60 L.Ed.2d 755 (1979). Accordingly, in construing the term conviction in any court under Chapters 40 and 44, ATF is not on sound legal ground in looking to the language of 18 U.S.C.App. § 1202(a)." The cited 1974 interpretation was contained in a memorandum, but does not appear from the record to have been included in any gun control regulations and thus it does not act as a permanent inhibition upon the agency, in our opinion. Even were this so, "[c]ategorical exemptions from the clear commands of a regulatory statute, though sometimes permitted, are not favored." *Alabama Power Company v. Costle,* 636 F.2d 323, 358 (D.C.Cir.1979). Moreover, no specific claim has been made here that Winson relied upon the 1974 interpretation. On the contrary, in his appeal brief it is noted that "it cannot be said that defendant was aware of or relied on its memorandum." The cited objections found in the 1974 interpretation may or may not pose difficulties in prosecution of persons convicted of foreign crimes under the Act, but these are evidentiary problems for the prosecution; they may not serve as a basis for precluding or dismissing the indictment altogether. Whether Winson will have other defenses to the charges, we cannot know and it is not our function to anticipate them. These must await the further progress of the case upon remand.

Accordingly, the judgment of the district court is vacated and the cause remanded with directions to reinstate the indictment.

---

tary of the Treasury for Enforcement and Oper-   ations. This, too, is an internal document.