**UNITED STATES of America,
Plaintiff,**

v.

**Rohan INGRAM, Defendant.**

**No. 01–CR–090 (LEK).**

United States District Court,
N.D. New York.

Aug. 24, 2001.

L. John Van Norden, Office of L. John Van Norden, Schenectady, NY, for Kirk Gayle.

Michael P. Mansion, Rutnik, Rutnik Law Firm, Albany, NY, Van Zwisohn, Office of Van Zwisohn, Clifton Park, NY, for Rohan Ingram.

Paul J. Evangelista, Office of the Federal Public Defender, Albany, NY, for Anne-Marie Richardson.

William C. Pericak, AUSA, Office of United States Attorney, Albany, NY, for U.S.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court are Defendant's Motions to Suppress Evidence and Dismiss Count Three of the Superseding Indictment. For the reasons stated herein, these motions are DENIED.

### I. BACKGROUND

On February 16, 2001, co-defendant Kirk Gayle attempted to enter the United States at Champlain, New York. Gayle was stopped and questioned by agents of the United States Border Patrol. The agents

found a piece of paper that Gayle was carrying containing a telephone number and another three-digit number. Border Patrol Agent Peter Dunbar called the telephone number and discovered that it belonged to the Smithfield Inn located in Plattsburgh, New York. The other number on the piece of paper contained three digits "132", presumably that of a room at the hotel. The clerk at the hotel refused to divulge the name of that room's occupant. Agent Dunbar then drove to the hotel.

When Agent Dunbar arrived at the hotel, the desk clerk told him that the room was registered to Rohan Ingram. Agent Dunbar ran a criminal record check on Ingram through the Treasury Enforcement Computer System (TECS) located in Swanton, Vermont. The check revealed that Ingram was not a citizen of the United States and had a criminal record in Canada, including multiple convictions for firearms offenses. Ingram was therefore, illegally present in the United States. The information from the background check cautioned "that [Ingram] was possibly armed and dangerous, had a history of violence."

Border Patrol Agent Labounty soon joined agent Dunbar at the hotel. As the two agents approached Ingram's room they saw a male walking down the hall. The agents approached the man, identified themselves, and asked him for identification. The man stated that he was Rohan Ingram and told the agents that he was from Canada. After producing a Canadian driver's license for identification, Ingram was placed under arrest.

The Agents then asked Ingram who else was in the hotel room since they heard voices coming from his room. Ingram did not answer so the Agent's knocked on the room's door. Ann–Marie Richardson answered. Agent Dunbar asked her for identification. Richardson turned and walked across the hotel room toward a bag

to retrieve her identification. Agent Dunbar followed her inside the room. As he walked past the bathroom he saw a box labeled "Firearms" inside an open duffle bag. The bag contained approximately 13 handguns. Agent Dunbar placed Richardson in custody. Subsequently, Ingram provided a signed, written statement to federal law enforcement officials.

Defendant Ingram now seeks to suppress all evidence seized from the hotel room on February 16, 2001 and his written statement to federal law enforcement officials. Defendant argues that the Agents' actions constituted an unlawful search and seizure in violation of his Fourth Amendment rights. An evidentiary hearing was held before the Court on July 3, 2001 and July 9, 2001, and the parties submitted memorandums of law in support of their positions. Defendant Ingram also moves to dismiss Count Three of the Indictment because his predicate conviction is from a foreign jurisdiction.

There are three questions the Court must answer if the Government is to be allowed to use the evidence discovered in Defendant's hotel room. The preliminary question is whether Agents Dunbar and Labounty had probable cause to arrest Defendant. Second, did the agents have the right to enter Defendant's hotel room? Third, did the agents have the right to seize the evidence once inside the hotel room? Whether Defendant's written statement is admissible turns on whether Defendant was properly Mirandized. Lastly, the issue of Count Three depends on whether a conviction from a foreign jurisdiction may serve as a predicate offense for a violation of 18 U.S.C. § 922(g).

## II. ANALYSIS

### A. Fourth Amendment

#### 1. *Probable Cause to Arrest*

Law enforcement officers may lawfully arrest persons without an arrest

warrant under certain circumstances. A warrantless arrest is permitted when an officer has probable cause to believe the arrestee has committed a felony. *See United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause to make a warrantless arrest exists when at the time of the arrest "the facts and circumstances within the [officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Defendant argues that the evidence found in his hotel room is the inadmissible fruit of an unconstitutional arrest. In the case at hand the Agents had probable cause to arrest Ingram based on the criminal background check run through TECS. The background check revealed that Ingram was not a citizen of the United States and had a criminal record in Canada, including multiple convictions for firearms offenses. Ingram was therefore, illegally present in the United States. This information gave the Agents probable cause to arrest him. When the Agents approached Mr. Ingram outside his hotel room and he identified himself as Rohan Ingram, they properly placed him in custody.

### 2. *Search Incident to Lawful Arrest*

■ Police may conduct a warrantless search of a suspect incident to an arrest where a full custodial arrest is allowed. *See New York v. Belton*, 453 U.S. 454, 461, 101 S.Ct. 2860, 69 L.Ed.2d 768(1981); *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The scope of the search is not limited to the suspect's person, but extends to the suspect's "wingspan," or "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The police may also make a "protective sweep" of the area beyond the suspect's wingspan in order to protect the safety of the officers if they believe accomplices may be present. *See Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276. In order for officers to perform this protective sweep they must be able to articulate facts that would warrant a reasonably prudent officer to believe that the area to be swept harbors an individual that poses a danger to those on the scene. *Buie*, 494 U.S. at 334, 110 S.Ct. 1093; *see also United States v. Biggs*, 70 F.3d 913, 916 (6th Cir.1995) (finding a protective sweep of a motel room valid when the suspect was arrested outside the motel room and officers had a reasonable belief, based on knowledge that defendant had previously been arrested with armed companions, that individuals posing harm to the officers might be in the motel room). Evidence in plain view may be seized during a protective sweep. *Buie*, 494 U.S. at 330, 110 S.Ct. 1093.

■ In order to find the protective sweep at issue here constitutional under the *Buie* standard, the Agents must articulate why the search of the hotel room was reasonably necessary once Ingram was placed in custody in the hallway of the hotel. In this case, the Agents have articulated factors that would lead a reasonably prudent officer to believe that they might be in danger from someone else in the hotel room. First, Agent Dunbar testified that he heard more than one voice coming from Ingram's hotel room. Second, from the background check, the Agents knew that the registered occupant, Rohan In-

gram, was possibly armed and dangerous, had a history of violence and had a criminal history in Canada for weapons violation. In fact, before approaching Ingram's room, the Agents put on bulletproof vests to protect themselves. Agent Dunbar also testified that he followed Richardson in the hotel room because he was concerned that there might be weapons in the room. He also stated that he wanted to make sure there was no one else in the room. The Court concludes that the Agent's testimony supports a reasonable suspicion that they might be in danger from someone else in the hotel room. Therefore, the Agent's were justified in performing a protective sweep of Ingram's hotel room.

### 3. *Seizure of Items in Plain View*

■ Under certain circumstances, the police may seize evidence found in plain view even though they do not have a warrant. As a preliminary matter, the government must show that the Fourth Amendment was not violated when the officers arrived at the place where they viewed the evidence. *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Second, the officer must have a right of access to the object. *Id.* Lastly, the incriminating character of the evidence must be immediately apparent. *Id.*

■ As previously discussed, the Agents did not violate Defendant's Fourth

Amendment rights and were justified in making the protective sweep of the hotel room. This puts them lawfully in a location from which to view and access the evidence. Once lawfully in the room, Agent Dunbar testified that he observed an open duffle bag with a box inside labeled "firearms." The incriminating character of the evidence was readily apparent given its labeling. The evidence seized at the hotel, consisting of approximately 13 handguns, is therefore admitted into evidence.

### B. Defendant's Written Statement

■ Defendant also claims that his post-arrest statement was illegally obtained in violation of his Fifth Amendment rights.[1] The Fifth Amendment grants a suspect a right to counsel in order to protect the individual's right against self-incrimination prior to the initiation of formal judicial proceedings against him. The right to counsel applies to all statements an individual makes when subject to custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires that before questioning an individual in custody, the suspect be informed of his/her rights.

■ The record is clear that multiple *Miranda* warnings were given to Ingram and that he knowingly waived his rights. Agents Dunbar and Labounty testified

---

1. Defendant also claims that the written statement was given in violation of his Sixth Amendment, though he does not address his Sixth Amendment claims in his Motion papers. The Sixth Amendment right to counsel attaches at the initiation of adversarial judicial proceedings "whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Since Defendant's Sixth Amendment right had not attached at the time the written statement was given, Defendant's argument is misplaced. Defendant's argument for dismissal rests upon his Fifth Amendment Rights. *See United States v. Guido,* 704 F.2d 675, 676 (2d Cir.1983) ("Since the Sixth Amendment right to counsel attaches only after the filing of formal charges, appellant's incriminating statement, if protected at all, is protected by the Fifth Amendment rather than the Sixth.") *See also United States v. Duvall,* 537 F.2d 15, 20–22 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

that Dunbar read Ingram his *Miranda* warnings in the hotel room after arresting him. Supervisory Agent Amentis testified the he also apprised Ingram of his *Miranda* rights in the hotel room and that Ingram understood them, but indicated that he wished to waive them.[2] Amentis "Mirandized" Ingram once again at his office, and obtained another waiver before taking the statement from Ingram. Additionally, Ingram's written statement declares that "I, Rohan Ingram ... have been advised of my rights and waive my right to have counsel present while being interviewed by Detective Thomas Penfield." In light of this testimony, the Court finds that Defendant's statement was properly obtained and is admissible into evidence. Consequently, Defendant's motion to suppress the statement is denied.

## C. Defendant's Motion to Dismiss Count Three of the Superseding Indictment

■ Count three of the indictment alleges that Defendant, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess a firearm in violation of 18 U.S.C. § 922(g). Section 922(g)(1) prohibits possession of a firearm by "any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g). The issue presented is whether the "in any court" provision of § 922(g) applies only to convictions by courts within the United States. Defendant argues that because Count Three of the indictment is predicated upon a conviction allegedly obtained in Canada, a 1996 Canadian conviction for the use of a firearm while committing an indictable offense, this conviction does not bring him within the class of

persons prohibited from possessing firearms under § 922(g).

1. *A Foreign Conviction May Serve as the Predicate Offense for a Violation of § 922(g)*

In *United States v. Winson*, 793 F.2d 754, 758 (6th Cir.1986) the Sixth Circuit upheld an indictment charging the defendant with a violation of 18 U.S.C. § 922(h). In *Winson*, the violation of § 922(h) was based upon Argentinian and Swiss convictions. *See id.* 793 F.2d at 756. The court in that case found that the use of the term "in any court" within the statute "was not intended by the Congress to be limited only to convictions in the courts of the United States or of a state or political subdivision thereof." *Id*, at 757. The court reasoned that

> since the object of the statute is to prevent the possession of firearms by individuals with serious criminal records, we can perceive no reason why the commission of serious crimes elsewhere in the world is likely to make the person so convicted less dangerous than he whose crimes were committed within the United States. Moreover, we do not perceive any congressional intent to exclude from the Act's coverage a class of felon whose unlawful conduct occurred outside of this country.

*Id.* at 785 (internal citations omitted).

The Fourth Circuit similarly held that an English conviction was a proper predicate for an 18 U.S.C. § 922(g) conviction, reasoning that the plain meaning of the term "any court" is unambiguous and includes courts of foreign jurisdiction.

■ Defendant also argues that the Canadian convictions do not rise to the level of a felony because Defendant re-

**2.** Penfield testified that he observed Amentis    Mirandizing Ingram.

ceived a sentence of less than one year. Defendant's prior conviction was for a violation of § 85(1)(a) of the Canadian Criminal Code (Using firearm in commission of offence). A violation of § 85(1)(a) carries an imprisonment term not exceeding fourteen years and a minimum punishment of imprisonment for a term of one year. See R.S.C. § 85(3)(a). What matters when determining whether an offense comes under 18 U.S.C. 922(g) is not the actual sentence Defendant received. Rather the Court must examine the maximum possible sentence for the charged offense. *See United States v. Arnold,* 113 F.3d 1146, 1148 (10th Cir.1997) (rejecting an attempt by defendant who had been sentenced to eleven months on underlying conviction "to rewrite 18 U.S.C. § 922(g)(1) by converting the word 'punishable' into 'punished.' "). In this case, the maximum possible sentence for Defendant's Canadian offense is a term of imprisonment of fourteen years. Defendant's Canadian conviction for a violation of § 85(1)(a) is, therefore, "a crime *punishable* by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g) (emphasis added).

Since this Court agrees with the reasoning of the Sixth and Fourth Circuits it finds that Ingram's prior Canadian conviction serves as a proper predicate under § 922. The Court holds that Defendant's motion to dismiss Count Three is denied.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendant's Motion to Suppress the physical evidence seized from his hotel room on the night of February 16, 2001 is DENIED; and it is further

---

1. This action was originally brought against Kenneth S. Apfel ("Apfel") in his official capacity as Commissioner of Social Security.

ORDERED that Defendant's Motion to Suppress the written statement is hereby DENIED; and it is further

ORDERED that Defendant's Motion to Dismiss Count Three of the Indictment is hereby DENIED; and it is further

ORDERED that the Clerk serve copy of this order on all parties by regular mail.

IT IS SO ORDERED