UNITED STATES of America,
Appellee,

v.

Kirk GAYLE, Ann–Marie Richardson,
Defendants,

tempt and proffer little evidence in support of their argument.

Rohan Ingram, Defendant–Appellant.

No. 02–1095.

United States Court of Appeals,
Second Circuit.

Aug. 27, 2003.

———

Philip L. Weinstein, Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Defendant–Appellant.

David M. Grabie, Assistant United States Attorney (Barbara D. Cottrell, Senior Litigation Counsel, William C. Pericak, Assistant United States Attorney, of counsel), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, NY, for Appellee.

PRESENT: MCLAUGHLIN, LEVAL, and KATZMANN, Circuit Judges.

### Summary Order

UPON DUE CONSIDERATION of this appeal from the judgment of the United States District Court for the Northern District of New York (Kahn, *J.*), it is hereby

ORDERED, ADJUDGED, AND DE-CREED that the judgment of the District Court is AFFIRMED.

Defendant-appellant Rohan Ingram appeals from a judgment of the District Court, convicting him of various counts relating to his unlawful possession and illegal transportation of firearms. Ingram raises two issues on appeal. This summary order concerns the first issue, which is whether the District Court erred in failing to suppress firearms evidence seized as a result of an allegedly unconstitutional search of his hotel room. We address the second issue, which concerns whether Ingram's Canadian conviction constitutes a predicate offense under 18 U.S.C. § 922(g)(1), in an opinion also filed on this date. Accordingly, below we briefly set forth the facts relevant to the suppression issue.

On February 16, 2001, co-defendant Kirk Gayle attempted to enter the United States from Canada at Champlain, New York, where he was subjected to a border inspection conducted by United States Customs inspectors. Special Agent Peter Dunbar, a supervisory board patrol agent present during the inspection, observed Gayle to be "evasive," "visibly nervous," and "sweating profusely." Agent Dunbar also suspected that someone else had been riding with Gayle upon noticing wet floor-

boards behind the driver's seat in Gayle's car.

The inspectors obtained from Gayle a piece of paper with what appeared to be a phone number followed by a three digit number. The phone number was for the Inn at Smithfield, a hotel in Plattsburgh, New York, causing Agent Dunbar to suspect that the three digit number was a hotel room number. Agent Dunbar traveled to the Inn at Smith field, where he learned that the room was registered in the name of defendant-appellant Rohan Ingram. Agent Dunbar then requested from the Customs dispatch office a records check on Ingram's criminal history, immigration status, and tax records. The dispatch office cautioned Agent Dunbar that Ingram was possibly armed and dangerous. Specifically, the record check revealed that Ingram had an extensive criminal history, which included violence, narcotics trafficking, and weapon violations in Canada.

Agent Richard Labounty soon arrived at the Inn at Smithfield to provide assistance. As Agents Dunbar and Labounty approached Ingram's hotel room, Ingram emerged from the room. The agents identified themselves to Ingram, who revealed his name and produced a Canadian driver's license. The agents then arrested Ingram for being illegally in the United States, informed him that they believed he was wanted in Canada, and placed him in handcuffs.

After arresting Ingram, the agents heard voices coming from the hotel room. When they asked Ingram who else was in the room, "he was evasive and uncooperative and didn't really tell [the agents] who was there." The agents proceeded to knock on the door and were met by Ann–Marie Richardson, another charged defendant who ultimately testified as a cooperating witness at Ingram and Gayle's trial.

Recognizing Richardson's name from an acquaintance list in Ingram's tax record, Agent Dunbar believed that Richardson was excludable from the United States because of her criminal history in Canada. Richardson claimed not to have her immigration documents with her at the time, but she stated that her identification was in a bag across the room.

Agent Dunbar claimed to be concerned that Richardson would retrieve not identification, but instead a weapon, and that other individuals may have been hiding in the room. Agent Dunbar therefore accompanied Richardson as she walked towards the bag to enable him to "keep an eye on her and on her hands and all." As Agent Dunbar and Richardson approached the bag that supposedly contained her identification, Agent Dunbar viewed white cardboard boxes marked "firearms." Agent Dunbar claimed that the boxes were "clearly visible" and that he did not have to manipulate the duffle bag at all to see the markings on the boxes. Upon noticing the word, "firearms," Agent Dunbar notified Agent Labounty, who proceeded to handcuff Richardson. Agent Dunbar opened the top two boxes to verify that they in fact contained firearms, which they did.

On May 28, 2001, Ingram was charged in a superseding indictment with conspiracy to unlawfully export defense articles designated on the United States Munitions List in violation of 18 U.S.C. § 371, 22 U.S.C. § 2778; conspiracy to travel with intent to engage in the illegal acquisition of firearms, in violation of 18 U.S.C. §§ 371, 922(a)(1)(A), 924(n); and being a felon unlawfully in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Ingram moved before the District Court to suppress the physical evidence seized during Agent Dunbar's search of the hotel room, alleging that the evidence was ob-

tained in violation of his Fourth Amendment rights because Ingram had a legitimate expectation of privacy in his hotel room. The government argued that the firearms seized by Agent Dunbar were admissible under the "search incident to arrest" exception. The District Court conducted a suppression hearing on July 3, 2001, and July 9, 2001, at which various witnesses described the events set forth above.

On August 24, 2001, the District Court denied Ingram's motion to suppress. *United States v. Ingram,* 164 F.Supp.2d 310 (N.D.N.Y.2001). The court first determined that Agents Dunbar and Labounty had probable cause to arrest Ingram based on the information revealed in the background check. *Id.* at 314. The court then concluded that the agents' protective sweep of the hotel room was constitutional because it was incident to a lawful arrest and the agents had "a reasonable suspicion that they might be in danger from someone else in the hotel room." *Id.* at 315. Finally, because the court concluded that the agents were justified in executing a protective sweep of the hotel room, they were "lawfully in a location from which to view and access the evidence." *Id.* For these reasons, the court concluded that the evidence seized was admissible under the "protective sweep" and "plain view" exceptions to the warrant requirement. *Id.* at 314–15, 317.

Ingram and Gayle were tried together in a trial commencing on October 1, 2001. On October 5, 2001, the jury found Ingram guilty on all three counts and acquitted Gayle of all charges. Ingram moved for a judgment of acquittal, which was denied on February 5, 2002. On January 30, 2002, Ingram was sentenced to seventy-eight months' imprisonment, to be followed by a three-year term of supervised release, and a special assessment of $300.

Ingram concedes that Agent Dunbar had probable cause for his arrest, but argues that Agent Dunbar exceeded constitutionally permissible bounds by entering into his hotel room and by following Richardson to her bag. The government responds that Agent Dunbar acted reasonably in light of the circumstances, and that the evidence was lawfully viewed in the course of a protective sweep permissible under the Fourth Amendment. A district court's factual findings underlying its denial of a motion to suppress are viewed in the light most favorable to the government and reviewed for clear error, while the legal issues the court addressed are reviewed *de novo.* *United States v. Davis,* 326 F.3d 361, 365 (2d Cir.2003).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The amendment proscribes warrantless searches unless they fall under one of certain well-defined exceptions. *See Smith v. Ohio,* 494 U.S. 541, 542, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990); *United States v. Oguns,* 921 F.2d 442, 446 (2d Cir.1990) (referring to "the axiom that warrantless searches are *per se* unreasonable, subject to a few well-delineated exceptions" (internal quotation marks and citation omitted)). One of these exceptions is a security sweep incident to a lawful arrest. *See Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *see also United States v. Robinson,* 414 U.S. 218, 230–37, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (setting forth search incident to arrest exception to warrant requirement); *Smith,* 494 U.S. at 543, 110 S.Ct. 1288 ("The exception for searches incident to arrest permits the police to search a lawfully arrested person and areas within his immediate control."). Because Ingram does not challenge the

lawfulness of his arrest, we consider whether the search exceeded the bounds of the protective sweep exception.

The Supreme Court enunciated the protective sweep doctrine in *Buie,* where it held "that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334, 110 S.Ct. 1093. To conduct a search that extends beyond an examination into immediately adjoining areas, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* "[I]f an officer reasonably concludes that an individual poses a danger to those at the scene of the arrest, the threat of physical harm may be neutralized by a quick search for weapons within the reach of that individual." *United States v. Blue,* 78 F.3d 56, 59 (2d Cir. 1996). Although a protective search may not constitutionally extend to a full search of the premises, it may include a search "for weapons within the grab area of an individual whom the government agents have reasonably concluded is dangerous." *United States v. Hernandez,* 941 F.2d 133, 137 (2d Cir.1991).

Under the protective sweep doctrine, Agent Dunbar was permitted to conduct a sweep to protect himself from danger posed not just by Ingram, but also by others. *See Buie,* 494 U.S. at 334, 110 S.Ct. 1093. At the suppression hearing, Agent Dunbar testified to various facts which permitted him to conclude that the situation was sufficiently dangerous so as to justify the hotel room search. Shortly before Ingram's arrest, Agent Dunbar learned that Ingram could be armed and dangerous and had an extensive criminal history of violence and firearms possession. After arresting Ingram, Agent Dunbar heard voices coming from a nearby hotel room, which was registered in Ingram's name. In light of these circumstances, it is quite understandable that Agent Dunbar would fear that the individuals in the room could pose a threat to his and Agent Labounty's safety. For these same reasons, it was reasonable for Agent Dunbar to accompany Richardson as she retrieved her identification to ensure that she was not instead retrieving a firearm.

Having concluded that Agent Dunbar's protective sweep was lawful, we turn to whether the items seized in the course of this sweep were within plain view. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We already have held that Agent Dunbar was lawfully in the hotel room. At the suppression hearing, Agent Dunbar testified that as he walked with Richardson into the hotel room, "I looked over to my left, and down, and there was a duffle bag sitting on the floor, ... and there were cardboard boxes in the top and in bold letters it said firearms on top of the boxes." This testimony firmly established that the incriminating character of the evidence was immediately apparent for Agent Dunbar to observe while he performed the protective sweep of the hotel room.

We have reviewed all of the defendant-appellant's arguments and, for reasons stated above and in the opinion filed on

this date, affirm the judgment of conviction.