**UNITED STATES of America,**

v.

**Edmund AGBODJAN, Defendant.**

**No. 5:11–CR–145.**

United States District Court,
N.D. New York.

July 2, 2012.

Richard S. Hartunian, United States Attorney, Gwendolyn E. Carroll, Esq. Asst. United States Attorney Northern District of New York, Syracuse, NY.

Kenneth M. Moynihan, Esq., Office of Kenneth M. Moynihan, Syracuse, NY.

*MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

## I. INTRODUCTION

On May 25, 2011, the grand jury returned a four-count superseding indictment charging the defendant, Edmund Agbodjan ("Agbodjan"), with one count of fraud, two counts of aggravated identity theft, and one count of possession of access devices. On May 2, 2012, Agbodjan filed a motion for omnibus relief seeking the suppression of evidence seized from the motel room where he was arrested as well as other relief. The United States of America ("the Government") opposes.

Oral argument was heard on June 22, 2012, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

In early February of 2011, Special Agent John Szydlik ("Agent Szydlik") of the United States Secret Service learned of unusual shipping activity from an address in Syracuse. A source with the United Parcel Service advised that, within a one-month period, seventy-two shipments had been delivered to the Syracuse address, and nineteen shipments had been sent from there to Canada. Agent Szydlik tracked down two victims who revealed that their credit card accounts had been compromised. Purchases using their credit card accounts had been shipped to the Syracuse address. Because of his experience with the Electronic Crimes Task Force,[1] he suspected the existence of a "reshipping scam," whereby a scammer uses stolen credit card information to purchase goods over the internet and ships

---

1. The Electronic Crimes Task Force is designed to allow collaboration between the United States Secret Service and other law enforcement agencies for the purpose of gathering intelligence and combating crimes utilizing computers and electronic media.

these goods to an intermediary to forward on to another location.

Agent Szydlik learned that the resident at the Syracuse address was a woman named Tempest Saldivar ("Ms. Saldivar"). Through his experience, he knew that re-shipping scammers often use online dating services to meet women to facilitate the shipments. He interviewed Ms. Saldivar at her home and learned that "Ed Mund," a man she had met through an online dating site and considered her boyfriend, had been shipping packages to her address. He sent her shipping receipts, which she printed and affixed to the packages to re-ship to him in Canada.

Ms. Saldivar consented to a search of her apartment. Agent Szydlik discovered numerous items there, including packages, shipping labels, and a shipping invoice for a single Rimowa suitcase. She also showed him photographs of Ed Mund on Facebook. A later search of her email and chat messages revealed details of the scam, including Ms. Saldivar's romantic attachment to Ed Mund and his reassurances that the activity was legal.

On February 24, 2011, Ms. Saldivar contacted the Electronic Crimes Task Force and left a message stating that Ed Mund had made an unannounced visit to her. The next morning Agent Szydlik contacted her and learned that Ed Mund had arrived in Syracuse unexpectedly and was staying in room 111 of the Motel 6 located at 6577 Baptist Way, East Syracuse, until 11:00 a.m. After that, he reportedly planned to go the airport and fly to California.

Agent Szydlik, with members of the De-Witt Police Department, headed to the Motel 6. En route he contacted Ms. Saldivar, who advised that Ed Mund claimed to have firearms and a bomb. The officers arrived at the motel, where the front desk clerk advised that an individual matching Ed Mund's description had just come to the desk with another male to extend their stay in room 111 by one night. To create separation between Ed Mund and any weapons he might have, Agent Szydlik convinced the desk clerk to call his room and ask him to come downstairs for a refund. Agent Szydlik and the police officers then went to the hallway outside Ed Mund's room. When Agbodjan opened the door, Agent Szydlik identified him as the man from the photos Ms. Saldivar had shown him. Officers commanded him to keep his hands visible and to get on the ground. He did not comply and began backing into the motel room. A struggle ensued, and the defendant was restrained in the hallway. Agbodjan admits he opened his motel room door but asserts that he was placed under arrest before exiting the room. There was no arrest warrant.

Once Agbodjan was restrained, Agent Szydlik entered the room and joined the officers in performing a "protective sweep." Without a search warrant, he seized a laptop computer, Blackberry, iPhone, camera, clothing, and a suitcase. Twelve days later United States Magistrate Judge George Lowe issued a search warrant for the electronic items.

## III. DISCUSSION

In his omnibus motion, the defendant asserts that the seizure of his person and property violated the Fourth Amendment. The defendant seeks the suppression of the evidence seized and other relief.

### A. *Lawfulness of the Arrest and Protective Sweep*

At issue is whether the arrest of the defendant without a warrant in the threshold of his motel room, and the protective sweep that followed, were lawful.

██ Lacking a warrant, law enforcement officers need probable cause to arrest a suspect. *United States v. Valen-*

*tine,* 539 F.3d 88, 93 (2d Cir.2008). "[P]robable cause for arrest 'exists where the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *United States v. Cruz,* 834 F.2d 47, 50 (2d Cir.1987) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)).

█ The Fourth Amendment prevents law enforcement from entering a house to effect a warrantless arrest. *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). This applies to hotel rooms. *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). However, arrests made in open doorways are legal. *See, e.g., United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *United States v. Gori,* 230 F.3d 44, 53 (2d Cir.2000). "[A] suspect exposed to public view through an open doorway, even at home, cannot claim a protected privacy interest that triggers the warrant requirement...." *Gori,* 230 F.3d at 52. An attempt to retreat into the house does not render the arrest illegal. *Santana,* 427 U.S. at 42, 96 S.Ct. at 2409.

█ Following a lawful arrest, police may conduct a protective sweep of the area if they believe accomplices are present. *United States v. Ingram,* 164 F.Supp.2d 310, 314 (N.D.N.Y.2001) (Kahn, J.), *aff'd, United States v. Gayle,* 74 Fed. Appx. 96 (2d Cir.2003).

█ Agent Szydlik and the other officers had sufficient trustworthy information to believe that Agbodjan had committed crimes, including confirmation that stolen credit card information had been used to purchase and ship merchandise, information and emails provided by Ms. Saldivar, her positive identification of the motel room where the defendant was staying, and the evidence gathered at the Syracuse address. This evidence supplied the officers with probable cause to arrest the defendant.

█ Agbodjan was seized after he opened the door to his motel room and was restrained either in the doorway or immediately inside the room after he began to retreat. Because his door was open, he was exposed to the public view and can not claim a protected privacy interest under the Fourth Amendment.

█ Agent Szydlik had been informed by the motel desk clerk that another person might be present in the motel room. Following the arrest, he and the other officers conducted a lawful protective sweep to search for this person as well as to ascertain whether a bomb or firearms were present.

In sum, the warrantless arrest of the defendant at the open door of his motel room and the protective sweep that followed were lawful.

### B. *Suppression of Physical Evidence*

The main issue is whether the seized property should be suppressed.

█ "[A] seizure of personal property [is] *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). This protection clearly extends to hotel rooms. *Hoffa,* 385 U.S. at 301, 87 S.Ct. at 413. The "plain-view" doctrine presents an exception to the Fourth Amendment warrant requirement if three conditions are met: (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evi-

dence could be plainly viewed"; (2) the incriminating character of the evidence was immediately apparent; and (3) the officer had a lawful right of access to the object seized. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).

### 1. *Arriving at the Place*

■ The first element is met if the police did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed. As discussed above, police may follow a lawful arrest with a protective sweep of the area "to protect the safety of officers if they believe accomplices may be present." *Ingram,* 164 F.Supp.2d at 314. A protective sweep of the area and spaces immediately adjoining the place of arrest does not violate the Fourth Amendment. *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990). Agbodjan was arrested legally at his motel room door. Agent Szydlik had been informed that another person, guns, and a bomb might be present in the motel room. Thus, he was justified in performing a protective sweep of the motel room and arrived at the area lawfully.

### 2. *The Incriminating Nature of the Items*

■ The second element is met if the police have probable cause to believe the items are contraband without further searching them. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). To have probable cause to seize a common item, such as a computer, there must be a reasonable probability that it will contain evidence of a crime. *See United States v. O'Brien,* 498 F.Supp.2d 520, 538 (N.D.N.Y.2007) (Sharpe, J.) (although admissible by consent, a computer in the defendant's home could have been seized under the plain-view theory because there were indications

it had been used to have online sexual conversations with young girls and could contain lewd images of children), *aff'd,* 303 Fed.Appx. 948 (2d Cir.2008); *United States v. DeLouya,* No. 1:04–CR–588, 2005 WL 3244173, at \*20 (N.D.N.Y.2005) (Sharpe, J.) (although admissible by consent, a walkie-talkie could have been seized under the plain-view theory because there were indications it had been used in drug smuggling).

■ Crucial to the motion is whether the incriminating nature of the defendant's laptop, iPhone, Blackberry, camera, suitcase, and clothing was immediately apparent. Although these are everyday items, Agent Szydlik knew that a computer had been used in the reshipping scam. Through his interview with Ms. Saldivar, he was aware that email, chat messaging, and instant messaging had been the primary means of communication between her and the defendant. He also knew from experience that other electronic devices are used interchangeably with computers and are valued for their portability. A suitcase purchased as part of the scam was still missing. Thus, there was a reasonable probability that these items contained evidence of a crime, and Agent Szydlik had probable cause to seize them.

### 3. *Lawful Right of Access*

■ The final element to consider is whether the officers had a lawful right of access to the items. This element is a corollary to the first element, in that the officer must have a legitimate Fourth Amendment basis to enter the area where the evidence is located before he can seize it. *O'Brien,* 498 F.Supp.2d at 537. As explained above, the officers performed the protective sweep and entered the motel room lawfully. Thus, they had a lawful right of access to the laptop computer, iPhone, camera, clothing, and suitcase.

As all three elements of the plain-view analysis are satisfied, the warrantless seizure of the items did not violate the Fourth Amendment, and they will not be suppressed.

### C. *Request for a Suppression Hearing*

 The defendant seeks a hearing to determine the lawfulness of the seizure. A hearing is required as a matter of law if the moving papers state "sufficient facts which, if proven, would have required the granting of the relief requested by appellant." *United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969). The essential facts are not in dispute. The defendant was arrested when he opened the door to his motel room, and his items within the room were seized. As set forth above, based upon the uncontested circumstances surrounding that event the defendant is not entitled to the relief requested. An evidentiary hearing is not required and will not be granted.

### D. *Request for Transcripts of Prior Proceedings*

 Agbodjan requests free transcripts of any prior federal proceedings. The docket shows that two arraignments and one detention hearing have taken place.

 Free transcripts must be provided to an indigent defendant if they are necessary to vindicate a legal right and are otherwise available for a fee. *See Roberts v. LaVallee,* 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967). Two factors should be considered: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alterna-

tive devices that would fulfill the same functions as a transcript." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 434, 30 L.Ed.2d 400 (1971). The value of a transcript does not require a showing of need tailored to the facts of the particular case. *Id.* at 228, 92 S.Ct. at 434. It is the Government's burden to suggest alternative devices. *Id.* at 230, 92 S.Ct. at 435. Grand jury proceedings must be kept secret. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

Agbodjan is indigent and was appointed a public defender. In his request for free transcripts, he did not indicate how they would be helpful in vindicating a legal right or in preparing for trial. Therefore, the defendant's request will be denied at this time. The defendant may renew his request for free transcripts should the need for them become clear.

### E. *Other Requested Relief*

Agbodjan's remaining requests are for: (1) inspection and discovery; (2) disclosure of character evidence; (3) disclosure of defendant's prior criminal convictions as well as those of any potential witnesses; (4) notice of intent to use evidence [2]; (5) notes of law enforcement; (6) *Jenck's* material; (7) exculpatory material; and (8) allowance of further motions. All of these requests seek an order to compel conduct by the Government that is already required by rule or law. There is no indication that the Government has failed to comply with its obligations or that it will not do so going forward. These requests will be denied.

---

**2.** The defendant makes this request pursuant to "Rule 12(d)(2)" of the Federal Rules of Criminal Procedure. Rule 12(d)(2) no longer exists. It was changed in the 2002 amendments to Rule 12(b)(4). *See* Fed.R.Crim.P. 12(b)(4) (2002 Amendments) advisory committee's note.

## IV. *CONCLUSION*

The Government had probable cause to arrest Agbodjan. When Agbodjan opened his motel room door and stood at the threshold, he became exposed to the public view and lost his protected privacy interest under the Fourth Amendment. Following the lawful arrest, Agent Szydlik and the other officers performed a lawful protective sweep of the motel room to determine whether an accomplice, guns, or a bomb were present. While conducting the sweep, several items of an incriminating nature were in plain-view and were lawfully seized.

Therefore, it is

ORDERED that the defendant Edmund Agbodjan's motion for omnibus relief is DENIED in its entirety.

IT IS SO ORDERED.